United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KULVIR SINGH GARCHA,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

Defendants.

Case No. 25-cv-07215-TSH

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS PURSUANT TO
RULES 12(b)(1) AND 12(b)(6)**

Re: Dkt. No. 22

## I.    INTRODUCTION

Plaintiff Kulvir Singh Garcha filed suit against Defendants U.S. Department of Homeland Security, Kristi Noem, U.S. Citizenship and Immigration Services, Angelica Alfonso-Royals, U.S. Immigration and Customs Enforcement, and Todd M. Lyons (collectively, "Defendants"), alleging Defendants violated the Administrative Procedure Act by unlawfully dismissing his asylum application and reversing their treatment of him.  ECF No. 7 (First Amended Complaint).  Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 22 ("Mot.").  The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the March 19, 2026, hearing.  For the reasons stated below, the Court **DENIES** the motion.[1]

## II.    BACKGROUND

### A.    Factual Background

Garcha, an Indian national, entered the United States without inspection.  First Am. Compl. ("FAC") ¶ 5 (ECF No. 7).  Defendant Kristi Noem is the Secretary of the U.S. Department

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 2, 13.

of Homeland Security ("DHS") and is sued in her official capacity.  FAC ¶ 6.  Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component of DHS responsible for adjudicating immigration benefits, including asylum applications.  *Id.* ¶ 7.  Defendant Angelica Alfonso-Royals is the Director of USCIS and is sued in her official capacity.  *Id.* ¶ 8.  Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS responsible for immigration enforcement in the interior of the United States.  *Id.* ¶ 9.  Defendant Todd M. Lyons is the Acting Director of ICE and is sued in his official capacity.  *Id.* ¶ 10.

Overall, Garcha alleges that Defendants violated the Administrative Procedure Act ("APA") when (1) USCIS unlawfully dismissed Garcha's asylum application; and (2) Defendants threatened to subject Garcha "to a credible fear interview nearly four years after [DHS] opted against using expedited removal proceedings against him."  *Id.* ¶ 1.  Garcha requests the Court set aside Defendants' actions as they are both contrary to law and arbitrary and capricious.  *Id.*

### 1.    Garcha's Immigration History

Garcha is a national of India who entered the United States without inspection on November 24, 2021.  *Id.* ¶ 11.  As such, Garcha was deemed an applicant for admission.  *Id.* ¶ 12. DHS apprehended Garcha on entry and issued him a Form I-860, Notice and Order of Expedited Removal.  *Id.* ¶ 14; Opp. at 2:6–12.  Upon apprehension, Garcha expressed a fear of return to India.  FAC ¶ 15.  Although ICE was required to refer Garcha to an asylum officer for a credible fear determination, a credible fear interview was not scheduled or conducted.  *Id.* ¶¶ 15–17.

On December 9, 2021, ICE released Garcha.  *Id.* ¶ 17.  ICE served Garcha with an Interim Notice Authorizing Parole stating it had "decided to parole [Mr. Garcha] from its custody pursuant to its authority under section 212(d)(5)(A) of the Immigration and Nationality Act [8 U.S.C. § 1182(d)(5)]."  *Id.* (alterations in original).  The notice further stated:

> Parole is conditioned on you complying with the terms and conditions of your release.  You must notify ICE *and the immigration judge* of any address correction or address change.  *You must report for every scheduled hearing before the immigration court* and every appointment as directed by ICE (including for removal from the United States *should you become subject to a final removal order*).

*Id.* (emphasis in original).  That same day, ICE served Garcha with a Notice of Custody

2

United States District Court
Northern District of California

Determination stating Garcha was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act . . . pending a final administrative decision in [his] case." *Id.* ¶ 18 (alterations in original). The notice further stated that Garcha was entitled to "request a review of this custody determination by an immigration judge." *Id.* ¶ 19. Garcha elected to not request review. *Id.*

Since his release from custody, Garcha "has resided continuously in California." *Id.* ¶ 5. One month after being released, Garcha submitted an Application for Asylum and Withholding of Removal (Form I-589) with USCIS. *Id.* ¶ 20. USCIS accepted Garcha's Form I-589. *Id.* Garcha filed an Application for Employment Authorization (Form I-765) on June 21, 2022. *Id.* ¶ 21. On September 7, 2022, USCIS approved Garcha's Application for Employment Authorization pursuant to 8 C.F.R. § 274a.12(c)(8). *Id.*

On June 16, 2025, USCIS dismissed Garcha's Application for Asylum and Withholding of Removal, stating that "Department of Homeland Security (DHS) records indicate that you were apprehended by DHS officials, placed in expedited removal, and issued a Form I-860, Notice and Order of Expedited Removal." *Id.* ¶ 22. USCIS further stated "the asylum office cannot process your Form I-589" and "your claim . . . will be considered by an asylum officer through the credible fear screening process pursuant to 8 C.F.R. § 208.30." *Id.* Based on this dismissal, USCIS denied Garcha's request for an extension of his employment authorization. *Id.*

On August 18, 2025, USCIS ordered Garcha to appear for a credible fear interview on August 27, 2025. *Id.* ¶ 23. USCIS did not serve Garcha's counsel with a copy of its Notice of Credible Fear Interview. *Id.* Garcha appeared for the interview, but USCIS postponed the interview to September 9, 2025.[2] *Id.*

**2.    Garcha's Allegations**

Garcha alleges the following in the FAC. Upon Garcha's entry to the United States, DHS opted against using expedited removal proceedings against him. *Id.* ¶ 1. Under the Immigration and Nationality Act ("INA"), DHS has discretion to put noncitizens "in section 240 removal

---

[2] Defendants agreed to continue Garcha's credible fear interview to a date after the Court decides the merits of Garcha's complaint. *See* ECF No. 16.

proceedings even though they may also be subject to expedited removal under section 235(b)(1)(A)(i) of the Act."[3]  *Id.* ¶ 28.  Defendants' actions indicate that DHS exercised its discretion to refer Garcha for regular removal proceedings.  *Id.* ¶¶ 18, 29.  Specifically, DHS refused to refer Garcha for a credible fear interview for three and a half years, it informed Garcha that he was eligible for a custody redetermination hearing before an immigration judge, it released Garcha from custody and indicated that he would be placed in removal proceedings pursuant to INA § 240, it accepted Garcha's asylum application, and it granted Garcha employment authorization as a noncitizen who has filed an asylum application pursuant to 8 C.F.R., part 208. *Id.* ¶ 29.  After opting not to place Garcha in expedited removal proceedings, USCIS unlawfully dismissed his asylum application.  *Id.* ¶ 1.

More than three and a half years after Garcha filed his Form I-589 with USCIS, Defendants now claim that Garcha's "right to seek asylum, withholding of removal, and protection under the Convention Against Torture is contingent upon his passing a credible fear interview." *Id.* ¶ 24.  Defendants have not "explained these contradictions of their abrupt change of course," and they "wish to change course without explanation or evidence."  *Id.* ¶ 31.  Defendants' actions in their "abrupt and unexplained reversal in their treatment" of Garcha are thus arbitrary and capricious and contrary to law.  *Id.* ¶¶ 1, 31.

Defendants' actions violated the INA.  Contrary to the INA, Defendants did not "complete the process of making a credible fear determination within 90 days of issuance and service of a Form I-860, Notice and Order of Expedited Removal."  *Id.* ¶ 33.  Defendants are therefore now barred from subjecting Garcha to the expedited removal process.  *Id.*  The INA does not authorize Defendants to delay making a credible fear determination for more than one year after a noncitizen has entered the United States.  *Id.* ¶ 37.  DHS therefore cannot now condition Garcha's right to apply for asylum upon his passing a credible fear interview.  *Id.*

---

[3] As discussed below, "section 240 removal proceedings" are also known as "regular removal proceedings."  *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025) ("The regular removal procedure is also known as 'section 240 proceedings.'").

United States District Court
Northern District of California

**B.    Procedural Background**

On August 26, 2025, Garcha filed suit against U.S. Department of Homeland Security, Kristi Noem, U.S. Citizenship and Immigration Services, Angelica Alfonso-Royals, U.S. Immigration and Customs Enforcement, and Todd M. Lyons, alleging two causes of action:  (1) *Ultra Vires* Agency Action - No Final Expedited Removal Order; and (2) APA Violation - Arbitrary and Capricious Agency Action.  ECF No. 1.

On September 8, 2025, Garcha filed the operative First Amended Complaint ("FAC") against the same Defendants, alleging three causes of action:  (1) *Ultra Vires* Agency Action - No Final Expedited Removal Order; (2) Violation of the INA (INA § 241(a)(1)(A)); and (3) Violation of the INA (INA § 208(a)(2)(B)).  ECF No. 7.  Garcha seeks declaratory and injunctive relief and attorneys' fees and costs.  FAC at 10.  Specifically, Garcha requests the Court (1) immediately "enjoin Defendants from conducting any credible fear interview"; (2) declare that Garcha "is not subject to expedited removal"; (3) declare that Garcha "is entitled to full removal proceedings under INA § 240"; and (4) order "USCIS to accept and adjudicate [Garcha's] I-589 or refer him to an immigration judge for the adjudication of his application for asylum in removal proceedings under INA § 240."  *Id.*

On January 15, 2026, Defendants filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 22 ("Mot.").  On February 17, 2026, Garcha filed and Opposition.  ECF No. 23 ("Opp.").  On March 2, 2026, Defendants filed a Reply. ECF No. 24 ("Reply").

### III.    LEGAL STANDARD

**A.    12(b)(1)**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (cleaned up); *accord Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

United States District Court
Northern District of California

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction.  The party asserting federal subject matter jurisdiction must establish standing by a preponderance of the evidence.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

A jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *Id.*; *see Gordon v. United States*, 739, F. App'x 408, 411 (9th Cir. 2018) (explaining that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction") (cleaned up).  To overcome a factual challenge, a plaintiff must "support their jurisdictional allegations with competent proof."  *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (cleaned up).  Further, dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.    12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does

not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up).  A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV.    DISCUSSION

Defendants move to dismiss all of Garcha's claims for lack of federal subject matter jurisdiction and for failing to state a cognizable claim.  Mot. at 1–2.  Overall, Defendants argue that dismissal is warranted because (1) "the Court lacks jurisdiction to grant [Garcha] the relief he seeks"; (2) Garcha "fails to support his claim that USCIS' dismissal of his asylum application was arbitrary and capricious or in violation of law"; and (3) "Defendant is not time-barred from conducting a credible fear interview." *Id.* at 6, 10, 13.

In sum, the Court concludes that it has jurisdiction over Garcha's claims and that Garcha alleges cognizable claims under the APA,  Therefore, dismissal is not warranted.

### A.    Overview of Relevant Immigration Law

"The proliferation of immigration laws and regulations has aptly been called a labyrinth that only a lawyer could navigate." *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005).  The Court therefore first sets out background immigration law principles as relevant to Garcha's claims regarding removal proceedings and application for asylum.

Noncitizens who are present in the United States without having been admitted are deemed applicants for admission.  8 U.S.C. § 1225(a)(1).  This includes those noncitizens who enter the United States without inspection. *See DHS  v. Thuraissigiam*, 591 U.S. 103, 107–08 (2020) (explaining that noncitizens caught trying to enter the United States at places other than lawful ports of entry are treated as applying for admission); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1135-36 (D. Nev. 2025) (explaining that entry without inspection refers to noncitizens who are present in the United States without having been admitted or paroled) (citation omitted).  However, a noncitizen who enters without inspection is deemed inadmissible. *See* 8 U.S.C. § 1182(a)(6)(A)(i) (stating a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible").  And noncitizens who lack valid entry documents at the time of application for admission are likewise deemed inadmissible. *Id.* at § 1182(a)(7)(A)(i)(I).

Noncitizens deemed "inadmissible" are "removable." *Thuraissigiam*, 591 U.S. at 107–08.  Such noncitizens "are processed either through expedited removal proceedings or through regular

8

United States District Court
Northern District of California

removal proceedings." *Innovation L. Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). "The regular removal procedure is also known as 'section 240 proceedings.'" *Noori*, 807 F. Supp. 3d at 1157. Under the INA, when a noncitizen is ordered removed, "the Attorney General shall remove" the noncitizen "from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A).

Section 235 of the INA (8 U.S.C. § 1225) outlines the procedures for expedited removal and specifies the class of noncitizens who are eligible for expedited removal. *Innovation*, 924 F.3d at 507 (citing 8 U.S.C. § 1225(b)(1)). "Simply put, an applicant is eligible for expedited removal only if the immigration officer determines that the individual is inadmissible on one of two grounds: fraud or misrepresentation (§ 1182(a)(6)(C)) or lack of documentation (§ 1182(a)(7))." *Id.* Further, expedited removal is cabined

> to noncitizens who 1) are categorized as 'arriving in the United States,' or 2) have 'not been admitted or paroled into the United States' and cannot affirmatively show they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'

*Noori*, 807 F. Supp. 3d at 1157 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)). Under expedited removal proceedings, noncitizens can be ordered removed by an immigration officer "without further hearing or review," unless the noncitizen indicates either an intent to apply for asylum or a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i). Noncitizens in expedited removal who seek asylum "shall be detained" during the pendency of their asylum application. *Id.* at § 1225(b)(1)(B)(ii), (iii)(IV). However, under Section 212 of the INA (8 U.S.C. § 1182), such noncitizens may be paroled "for urgent humanitarian reasons or significant public benefit." *Id.* at § 1182(d)(5)(A); *see Matter of M-S-*, 27 I.&N. Dec. 509, 510 (A.G. 2019) (explaining a noncitizen in expedited removal "must be detained until his asylum claim is adjudicated," unless paroled under 8 U.S.C. § 1182(d)(5)(A)).

Pursuant to Section 235 of the INA, "[a]ll applicants for admission who are not processed for expedited removal are placed in regular removal proceedings." *Innovation*, 924 F.3d at 507 (citing 8 U.S.C. § 1225(b)(2)(A)). Regular removal proceedings are governed by Section 240 of the INA (8 U.S.C. § 1229a). These proceedings are commenced by the filing of a notice to appear

United States District Court
Northern District of California

("NTA") with the immigration court. *Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1116 (S.D. Cal. 2018) (citing 8 C.F.R. § 1239.1). This regular removal process involves an evidentiary hearing before an immigration judge, an opportunity for the noncitizen to show that they should not be removed, the ability to apply for asylum, and entitlement to two levels of appeal, one by the Board of Immigration Appeals ("BIA") and one by the federal court of appeals. *Thuraissigiam*, 591 U.S. at 108. Noncitizens in regular removal "may be arrested and detained pending a decision on whether" the noncitizen is to be removed from the United States. 8 U.S.C. § 1226(a). However, under Section 236 of the INA (8 U.S.C. § 1226), the Attorney General has discretion to either detain the noncitizen or to release the noncitizen on bond or conditional parole. *Id.* at § 1226(a)(1), (2)(A)–(B); *see also Matter of M-S-*, 27 I.&N. Dec. at 510, 516 (explaining that noncitizens in expedited removal may only be paroled under INA § 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A)) and not under INA § 236(a) (8 U.S.C. § 1226(a)(1)–(2)). And a noncitizen has the "right to seek review of the initial custody determination before an immigration judge at any time." *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1182 (D. Minn. 2025) (citing 8 U.S.C. §§ 1226(a)(1), (c)(1), (c)(4); 8 C.F.R. § 1003.19(a)).

Noncitizens who are inadmissible may be placed in regular removal proceedings. 8 U.S.C. § 1229a(a)(2). This includes noncitizens who are eligible for expedited removal. *See id.* (stating noncitizen placed in regular removal proceedings "may be charged with any applicable ground of inadmissibility under section 1182(a)"). Indeed, DHS has discretion to place noncitizens in regular removal, even when they qualify for expedited removal. *See* 8 C.F.R. § 208.30(b) (explaining that if a noncitizen who is subject to expedited removal expresses an intent to apply for asylum or a fear of persecution, USCIS has discretion to "refer" the noncitizen "for proceedings under section 240 of the Act without making a credible fear determination"); *Matter of E-R-M- & L-R-M-*, 25 I.&N. Dec. 520, 523 (BIA 2011) (holding "DHS has discretion" to put noncitizens "in section 240 removal proceedings even though they may also be subject to expedited removal").

Any noncitizen "who is physically present in the United States or who arrives in the United States" may apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify for asylum, a noncitizen must

meet the definition of a refugee, as defined under 8 U.S.C. § 1101(a)(42)(A). *Id.* at § 1158(b)(1)(A). Subject to limited exceptions, the noncitizen must also file the asylum application within one year after the date of their arrival in the United States. *Id.* at § 1158(a)(2)(B).

A noncitizen may affirmatively apply for asylum if they are physically present in the United States or seeking admission at a port of entry and are not in removal proceedings, and USCIS has jurisdiction over such asylum applications. *Id.* at § 1158(a)(1); 8 C.F.R. § 208.2(a)(1)(i); *see id.* at § 208.1 (explaining 8 C.F.R., part 208 (Subpart A) applies to applications for asylum under 8 U.S.C. § 1158). USCIS "shall adjudicate the claim of each asylum applicant whose application is complete . . . and is within the jurisdiction of USCIS[.]" 8 C.F.R. § 208.9(a). USCIS is authorized to grant employment authorization to noncitizens who, *inter alia*, have filed a complete application for asylum pursuant to 8 C.F.R., part 208, and whose application "[h]as not been decided, and who is eligible to apply for employment authorization under § 208.7 of this chapter because the 150-day period set forth in that section has expired." *Id.* at § 274a.12(c)(8). If USCIS does not grant a noncitizen asylum, and the noncitizen appears to be inadmissible, USCIS "shall refer the application to an immigration judge, together with the appropriate charging document, for adjudication in removal proceedings[.]" *Id.* at § 208.14(c)(1).

A noncitizen may defensively apply for asylum when they are subject to regular removal proceedings as a basis for relief from removal. 8 U.S.C. § 1229a(c)(4). Immigration judges ("IJ") obtain jurisdiction over these defensive asylum applications when an NTA or other charging document has been served on the asylum applicant and filed with an immigration court. 8 C.F.R. § 208.2(b). If an IJ denies asylum, the noncitizen has a right to appeal to the BIA and then to the federal court of appeals. *Id.* at § 1003.38(a); 8 U.S.C. § 1252(a)(5).

A noncitizen in expedited removal must follow certain procedures to apply for asylum. To avoid expedited removal, a noncitizen must indicate either an intent to apply for asylum or a fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i); *see* 8 C.F.R. § 208.30 (explaining 8 C.F.R., part 208 (Subpart B) applies to applications for asylum under 8 U.S.C. § 1225). If the noncitizen takes one of these actions, the immigration officer "shall refer" the noncitizen for an interview by an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii). This interview is known as a credible fear interview

("CFI"). *Arora v. DHS*, No. 25-cv-07064-RFL, 2025 WL 3641586, at *1 (N.D. Cal. Dec. 16, 2025). If during the CFI, the asylum officer determines that the noncitizen "has a credible fear of persecution," the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). When this occurs, the noncitizen is placed in regular removal proceedings where they may apply for asylum defensively. *Thuraissigiam*, 591 U.S. at 110 (citing 8 C.F.R. § 208.30(f)). If, on the other hand, the asylum officer determines that the noncitizen does not have a credible fear, the officer "shall order" the noncitizen removed "without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). An IJ conducts the final level of review in this situation if the noncitizen challenges the asylum officer's determination. *Thuraissigiam*, 591 U.S. at 110 (citing 8 C.F.R. § 1003.42(c), (d)(1)); *see also* 8 U.S.C. § 1252(e) (stating that except for limited review in habeas corpus proceedings, there is no judicial review of expedited removal orders).

"In January 2025, DHS published the 2025 Designation, authorizing expedited removal to be exercised to the 'full scope of its statutory authority.'" *Noori*, 807 F. Supp. 3d at 1158 (citation omitted). In implementing the 2025 Designation, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief and executing courthouse arrests." *Id.* (citation omitted).

## B.    Jurisdictional Arguments

Defendants argue that Garcha's claims fail for want of subject matter jurisdiction because 8 U.S.C. § 1252(a)(2)(A) ("Section 1252(a)(2)(A)") bars judicial review of the placement of a noncitizen in expedited removal; and (2) "USCIS's dismissal of [Garcha's] asylum application is not a final agency action under the Administrative Procedures Act." Mot. at 6:21–9:28.

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 16 (2020) (cleaned up). The Act "establishes a basic presumption of judicial review for one suffering legal wrong because of agency action." *Id.* (cleaned up). As such, the APA permits judicial review of federal agency action where a plaintiff seeks relief other than money damages, unless a statute precludes judicial review or the challenged agency action is

12

committed to agency discretion by law. 5 U.S.C. §§ 701, 702. Only final agency actions are subject to judicial review. *Id.* at § 704.

Here, Defendants argue that the APA does not permit judicial review of Garcha's claims because the INA expressly bars review and there is no final agency action to review. Mot. at 1. As discussed below, the Court disagrees on both counts.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss under Rule 12(b)(1).

### 1.    Jurisdictional Bar

Defendants argue that under Section 1252(a)(2)(A), the Court lacks jurisdiction to hear Garcha's claims because they concern "the validity of his expedited removal order, including in the context of [his] challenge to USCIS's asylum dismissal," and Garcha "has not filed a habeas corpus petition." Mot. at 7:4–8:25. Garcha contends that "this case does not constitute a collateral attack on the expedited removal order; it challenges USCIS's separate, arbitrary dismissal of a long-accepted asylum application." Opp. at 1:17–19.

"The APA waives sovereign immunity for actions in federal district court by persons suffering legal wrong because of agency action." *Doe v. Noem*, 781 F. Supp. 3d 1055, 1065 (E.D. Cal. 2025) (citing 5 U.S.C. § 702) (cleaned up). However, this waiver does not apply if the plaintiff's action is "expressly or impliedly forbidden by any other statute." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1022 (9th Cir. 2023) (citing 5 U.S.C. §§ 702, 704) (cleaned up).

Subject to limited exceptions, the INA strips federal courts of jurisdiction to review

> any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A)(i). Thus, Section 1252(a)(2)(A) bars nearly all judicial review of expedited removal orders. *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148 (9th Cir. 2022); *see id.* at 1149 (explaining 8 U.S.C. § 1225(b)(1) contemplates eligibility for expedited removal). Judicial review of any determination made under 8 U.S.C. § 1225(b)(1) is available through habeas corpus proceedings but is limited to three issues: (1) whether the petitioner is a noncitizen; (2) whether the petitioner was ordered removed under 8 U.S.C. § 1225(b)(1); and (3) whether the

13

United States District Court
Northern District of California

petitioner can prove by a preponderance of the evidence that they are lawfully admitted or have been granted asylum. 8 U.S.C. § 1252(e)(2). But Section 1252(a)(2)(A)'s bar only applies to expedited removal determinations—it does not preclude judicial review of other agency action. *See E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 754, 766 (9th Cir. 2018) (holding Article III standing existed for challenge to DHS rule imposing limitations on eligibility for asylum); *J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1057–58, 1064 (N.D. Cal. 2018) (finding plaintiffs showed a reasonable likelihood of success that USCIS's change in policy violated the APA for lack of a reasoned explanation).

Here, the Court concludes that as alleged, Garcha's claims are not barred by Section 1252(a)(2)(A). The parties dispute the proper framing of Garcha's claims. Defendants insist that Garcha's claims are barred because he is "challenging his placement in expedited removal." Reply at 3:4–6:6. But that is not what Garcha alleges; instead, Garcha challenges Defendants' shifting sands approach to his removal proceedings—originally placing him in expedited removal, then abandoning that decision to place him in regular removal, then changing course to renounce their previous decision to place him in regular removal. FAC ¶¶ 1, 31; Opp. at 5:1–7:22; *see also* Opp. at 5:4 ("Garcha does not contest the validity of the I-860."). In other words, Garcha alleges he is not in expedited removal because USCIS exercised its discretion to put him in regular removal and that its attempt to change course now is arbitrary and capricious. As much as they would like to, Defendants cannot rewrite Garcha's claims. *See Ruiz v. Bradford Exch., Ltd.*, 153 F.4th 907, 914 (9th Cir. 2025) ("Even when a defendant may think certain claims are useless, it remains true that a plaintiff is the master of his complaint.") (cleaned up). Therefore, the Court concludes that Section 1252(a)(2)(A) does not deprive the Court of subject matter jurisdiction.

Notably, in *Singh v. DHS*—a case squarely on all fours with the one here—a court in this district came to the same conclusion. No. 25-cv-04899-WHO, 2026 WL 323329 (N.D. Cal. Feb. 6, 2026) ("*Singh*"). Like Garcha, the plaintiff in *Singh* alleged "that the government's unprompted and sudden dismissal of his asylum application without review after it had been pending for more than three years was in violation of the Administrative Procedure Act, the Immigration Nationality Act, and his constitutional due process rights." *Id.* at *1. And like here (as Defendants recognize),

14

the government's argument that the plaintiff was never withdrawn from expedited removal failed to persuade the *Singh* court that the plaintiff was launching an indirect attack on an expedited removal order. *Id.* at *5; *see* Reply at 4:6–15. In short, the Court agrees with the reasoning in *Singh* that this case is unlike Defendants' cited cases because here, Garcha "contends that the government acted within its discretion to change his status and now has no right to revoke that change."[4] *Singh*, 2026 WL 323329, at *5; *see* Mot. at 7:26–8:25 (citing *e.g., Martinez v. Garland*, No. 8:20-cv-0977-PX, 2021 WL 4060434 (D. Md. Sept. 7, 2021)).

Further, Defendants' assertion that Garcha's claims are barred because "the weight of authority" holds that courts "lack jurisdiction to hear challenges to USCIS's dismissal of affirmative asylum applications" by noncitizens "in expedited removal proceedings" is disingenuous. Reply at 3:10–4:15. The cases cited for this proposition involve challenges to expedited removal orders by plaintiffs. *See Arora*, 2025 WL 3641586, at *1 ("All of Arora's claims challenge Defendants' authority to subject him to the expedited removal process or to effectuate an order of expedited removal."); *Singh v. DHS*, No. 25-cv-08180-JST, 2025 WL 3241157, at *3 (N.D. Cal. Nov. 20, 2025) ("Singh argues that no final order of removal was ever entered because the Form I-860 issued to Singh lacks the signature of a supervisor."); *S.W. v. Noem*, No. 25-cv-9264-PKC, 2025 WL 3754067, at *8 (S.D.N.Y. Dec. 29, 2025) (explaining plaintiff challenges "the defendants' decision to invoke expedited removal"); *M.T. v. Edlow*, No. 25-cv-2431-ABA, 2025 WL 3760738, at *4 (D. Md. Dec. 30, 2025) (holding "Plaintiffs' requested relief necessarily seeks an order invalidating the government's commencement of expedited removal proceedings" where Plaintiffs argued USCIS was prohibited from dismissing their affirmative asylum applications because they were not served with Form I-860s (Notice and Order of Expedited Removal) and some Forms were missing required signatures); Order (Dkt. No.

---

[4] Defendants argue that the *Singh* court erred because it "necessarily decided the plaintiff's status in removal proceedings, and the government's ability to invoke expedited removal." Reply at 4:6–15. But that is wrong. In *Singh*, the court concluded that "as currently pleaded, [plaintiff] is not challenging his 2021 order of removal." *Singh*, 2026 WL 323329, at *5. Contrary to Defendants' assertion, the *Singh* court did not issue a dispositive ruling on whether the plaintiff was withdrawn from expedited removal proceedings. *See id.* at *5 n.2 (finding that at the pleadings stage, the plaintiff "has met his jurisdictional burden on this issue").

United States District Court
Northern District of California

11), *G.Y.B.S. v. Noem*, No. 2:26-cv-0905-KBH, at *3 (E.D. Pa. Feb. 17, 2026) (explaining plaintiff challenges the validity of the expedited removal order).  But unlike those cases, here, Garcha does not contest the validity of an expedited removal order.  Opp. at 5:4.  Importantly, there is no indication that the plaintiffs in Defendants' cited cases brought claims based on the government's reversing course or that those plaintiffs pleaded that the government abandoned expedited removal in favor of regular removal.  Moreover, some of the cases cited were in a different procedural posture than here—on a motion for a temporary restraining order as opposed to a motion to dismiss.  *See Arora*, 2025 WL 3641586, at *1; *Singh v. DHS*, 2025 WL 3241157, at *1.  Therefore, Defendants' cited cases are inapposite.

### 2.     Final Agency Action

Defendants argue that USCIS's dismissal of Garcha's asylum application does not constitute final agency action under the APA because it is "not the consummation of the decision-making process."  Mot. at 8:26–9:28.  Garcha contends that USCIS's dismissal "is final agency action because it terminates substantive rights and forces [Garcha] into a different procedural track with different standards."  Opp. at 1:19–21.

"[T]wo conditions must be satisfied for agency action to be 'final':  First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up).  "Factors such as whether the action amounts to a definitive statement of the agency's position, whether the action has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance with the terms is expected provide an indicia of finality."  *J.L.*, 341 F. Supp. 3d at 1066 (citing *Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)) (cleaned up).

Here, the Court concludes that Garcha pleads sufficient facts to plausibly allege that USCIS's dismissal of his asylum application constitutes final agency action.  Defendants argue that USCIS's dismissal is not a final action because Garcha "can still seek asylum by establishing

16

a credible fear of persecution"; thus, the dismissal does not constitute consummation of the decision-making process because it is "subject to further review in removal proceedings." Mot. at 9:8–28. The problem with this argument is that it is belied by the record. Garcha alleges that USCIS definitively dismissed his asylum application because it could not process the application. FAC ¶ 22. Defendants do not dispute that "USCIS has not signaled any intent to revisit the dismissal or restore the I-589 to active adjudication." Opp. at 8:18–21 While Defendants assert that Garcha can bring a *new* claim for asylum in expedited removal, there is no indication that his application filed in 2022 will be renewed or reviewed. *See* Reply at 6:19–7:3 ("While the determination under the credible fear interview is different than adjudication of an affirmative asylum application, [Garcha] still has an opportunity to appeal to an immigration judge following a credible fear interview."). Therefore, because USCIS's dismissal is not subject to review, it is not tentative or interlocutory—the dismissal thus marks the end of USCIS's decision-making process. *Cf. Singh*, 2026 WL 323329, at *6; *see also Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1255 (11th Cir. 2020) ("[T]he I-129 denial was the consummation of USCIS's decision-making process because it was the agency's final word on the matter. USCIS's decision was neither 'the ruling of a subordinate official' nor a 'tentative' recommendation on the visa petition.") (citing *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992)).

Moreover, Garcha points to other factors—beyond the unreviewable nature of the dismissal—that support the finality of the dismissal. When USCIS dismissed his asylum application, he lost his employment authorization which affects his ability to work. Opp. at 8:19–24; FAC ¶ 22. And the dismissal terminated his substantive right to present an affirmative asylum claim. Opp. at 8:22–9:4; FAC ¶ 24. The fact that USCIS's dismissal had a "direct and immediate effect" on Garcha's employment status, along with "legal consequences" for Garcha's status as an asylum seeker, buttress the conclusion that the dismissal was a final agency action. *J.L.*, 341 F. Supp. 3d at 1066; *Bennett*, 520 U.S. at 177–78.

Defendants' reliance on cases involving USCIS's denial of affirmative asylum applications following review is misplaced. Mot. at 9:8–24 (discussing *Cabaccang v. USCIS*, 627 F.3d 1313 (9th Cir. 2010); *Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018)); *see also* Reply at 6:21–7:3. As

the *Singh* court aptly stated, "[t]his case is in a different posture than those in which USCIS has denied an application for asylum following review. In those cases, the availability of 'an appeal to a superior agency authority, or an intra-agency appeal to an administrative law judge . . . all render[ed] an agency decision nonfinal.'" *Singh*, 2026 WL 323329, at *6 (quoting *Cabaccang*, 27 F.3d at 1316) (alterations in original). But here, there is no indication that Garcha can appeal the dismissal or obtain a "full and fair hearing before an Immigration Judge" to contest the dismissal. *Cf. id.*

## C.    Sufficiency of Claims

Garcha alleges that Defendants' actions violated the APA because they were arbitrary and capricious, contrary to law, and *ultra vires*. FAC ¶¶ 1, 31. Defendants argue that Garcha fails to state a cognizable claim under the APA because Defendants' actions (1) are not arbitrary and capricious because USCIS correctly dismissed Garcha's asylum application based on lack of jurisdiction; (2) do not offend Garcha's Due Process rights because he is "owed only what the [expedited removal] statute provides"; and (3) do not violate the INA because there is "no statutory or regulatory provision that requires a credible fear interview to be conducted within a certain time frame." Mot. at 10:1–13:28. Garcha contends that he adequately states a claim under the APA. Opp. at 11:6–14:11.

Under the APA, "a reviewing court shall compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside" certain agency actions. 5 U.S.C. § 706(1)–(2). Specifically, agency actions that are arbitrary or capricious are unlawful and must be set aside. *Id.* at § 706(2)(A)); *see Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012) ("Under the APA, a court may set aside an agency decision if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (citing 5 U.S.C. § 706(2)(A)) (cleaned up). As are agency actions that are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Finally, agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" must be set aside. *Id.* at § 706(2)(C).

Here, Garcha asks the Court to hold unlawful and set aside Defendants' actions because

18

"USCIS's unexplained reversal violates the APA, independent statutory requirements, and due process."  Opp. at 18:9–19; *see* Mot. at 10:3–5 (citing FAC ¶ 31) (stating Garcha claims USCIS's dismissal of his asylum application was "arbitrary and capricious and in violation of the INA and Due Process Clause of the Fifth Amendment").  As discussed below, the Court concludes that Garcha alleges cognizable APA claims against Defendants.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss under Rule 12(b)(6).

### 1.    Arbitrariness And Capriciousness

Defendants argue that USCIS's dismissal of Garcha's asylum application was not arbitrary and capricious because it was lawfully based on a valid expedited removal order.  Mot. at 10:1–13:9.  Garcha contends that because "USCIS's unexplained reversal after years of contrary conduct fails each prong of the *State Farm* analysis," it is arbitrary and capricious under the APA.  Opp. at 1:26–2:1; 11:8–13:2.

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained."  *F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  Agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  In explaining its actions, an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Id.* (cleaned up); *see Regents*, 591 U.S. at 35 (noting APA imposes a procedural requirement on agencies that they provide reasoned explanations for their actions).

"Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."  *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).  "But *State Farm* teaches that when an agency rescinds a prior policy its reasoned analysis must consider the alternatives that are within the ambit of the existing policy."  *Regents*, 591 U.S. at 30 (cleaned

19

up).  As such, an agency's failure to consider alternatives renders the action arbitrary and capricious because the agency fails to consider an "important aspect of the problem."  *Id.* (citing *State Farm*, 463 U.S. at 43).  Moreover, when an agency changes course, it must address whether there was "legitimate reliance" on the prior action—"it must be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account."  *Id.* (cleaned up).   "It would be arbitrary and capricious to ignore such matters."  *Id*. (quoting *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Here, the Court concludes that Garcha pleads sufficient facts to plausibly allege that USCIS's dismissal of his asylum application was arbitrary and capricious, in violation of the APA.  The parties dispute whether Defendants elected to withdraw Garcha from expedited removal and instead refer him for regular removal proceedings.  "This presents a mixed question of fact and law, inappropriate for determination at the motion to dismiss stage."  *Singh*, 2026 WL 323329, at *7.  The question at this stage is whether Garcha adequately pleads that USCIS's dismissal of his asylum application was arbitrary or capricious.  He does.  Garcha alleges that Defendants did not refer him for a CFI for almost four years after issuing him an expedited removal order, released him from custody pursuant to 8 U.S.C. § 1226 with eligibility for a custody redetermination hearing, accepted his affirmative asylum application, and granted him employment authorization pursuant to 8 C.F.R. § 274a.12(c)(8).  FAC ¶¶ 18, 21, 29; *see* 8 U.S.C. § 1225(b)(1)(A)(ii) (requiring DHS to refer noncitizens for a CFI if they express fear of persecution); *id.* at § 1226(a)(1), (2)(A)–(B) (granting Attorney General discretion to release noncitizens who are subject to regular removal); 8 C.F.R. § 208.2(a)(1)(i) (giving USCIS jurisdiction over affirmative asylum applications); *id.* at § 274a.12(c)(8) (authorizing USCIS to grant employment authorization to noncitizens who apply for asylum under 8 C.F.R., part 208 (Subpart A) (not in expedited removal)).  Together, Garcha's allegations, along with DHS's legal authority to switch noncitizens from expedited to regular removal proceedings, make it plausible that DHS exercised its discretion to refer Garcha for regular removal.[5]  FAC ¶¶ 18, 29; *see* 8 C.F.R. § 208.30(b)

---

[5] Defendants' arguments that the Court should hold as a matter of law that they did not exercise discretion to refer Garcha for regular removal fail.  *See* Reply at 5:1–6:6.  First, Defendants

20

(granting USCIS discretion to refer noncitizen to regular removal without conducting a CFI); *Matter of E-R-M- & L-R-M-*, 25 I.&N. Dec. at 523 (holding DHS has discretion to place noncitizen in regular removal who is also eligible for expedited removal).

Garcha further alleges that USCIS suddenly dismissed his asylum application after it was pending for more than three and a half years without any explanation or acknowledgement of his status in regular removal. FAC ¶¶ 1, 24, 31. Taken as true, as the Court must at this stage, these allegations establish that Defendants violated the APA's arbitrary-and-capricious standard. First, Garcha plausibly alleges that USCIS failed to provide a reasoned explanation for its dismissal because it failed to display awareness of its changing position in reversing Garcha's status in regular removal. Opp. at 11:23–13:2. Defendants contend that USCIS provided an explanation for its dismissal—that Garcha is in expedited removal. Reply at 7:27–8:24. But providing *an explanation* is not tantamount to providing *a reasoned explanation* that includes an awareness of changing position. As such, Garcha plausibly alleges arbitrary and capricious conduct by USCIS. *Regents*, 591 U.S. at 30; *see Fox*, 556 U.S. at 515 ("To be sure, the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books.") (emphasis in original); *cf. Singh*, 2026 WL 323329, at *6–7.

Second, Garcha plausibly alleges that USCIS failed to consider important aspects of the problem because, *inter alia*, the agency failed to consider Garcha's reliance interests in his referral to regular removal, as indicated by Defendants during the preceding three and a half year period.

---

equivocate on this position. *See id.* at 5:24–25 ("[Garcha's] release into the country was for the express purpose of appearing for removal proceedings (*either* credible fear *or* Section 1229a proceedings) based on his unlawful entry.") (emphasis added). Second, Defendants cite no authority for their proposition that releasing Garcha under 8 U.S.C. § 1226 "does not divest DHS of its statutory authority to maintain him in expedited removal[.]" *Id.* at 5:1–7. And in fact, courts have held the opposite with respect to parole under 8 U.S.C. § 1182. *See Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (citing 8 U.S.C. § 1225(b)(2)) ("But when ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track their removal and that it will proceed with the standard removal process under 8 U.S.C. § 1229a."). Finally, Defendants concede that DHS has discretion to place noncitizens in regular removal who are otherwise subject to expedited removal. Reply at 5:20–23. They merely contest that they exercised this discretion.

United States District Court
Northern District of California

Opp. at 12:14–21.  Defendants imply that because Garcha has no "substantive or procedural right" to asylum, he has no reliance interests in connection with his asylum application.  Reply at 8:17–9:11.  Yet Defendants cite no legal authority establishing that such features of asylum—even if true—automatically preclude reliance interests, and the Court is not aware of any.  *See Regents*, 591 U.S. at 31–32 (rejecting argument that "DACA recipients have no 'legally cognizable reliance interests' because the DACA Memorandum stated that the program 'conferred no substantive rights' and provided benefits only in two-year increments").  Therefore, Garcha plausibly alleges that Defendants' actions are arbitrary and capricious because they failed to consider important aspects of the problem.  *See id.* at 33 ("But, because DHS was not writing on a blank slate, it *was* required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns.")  (emphasis in original) (cleaned up).

### 2.    *Ultra Vires* Action

Defendants argue that their actions are not unlawful because (1) the INA does not require that a CFI "be conducted within a certain time frame"; and (2) Garcha "does not have a Due Process right to apply for asylum."  Mot. at 13:10–28; Reply at 6:7–18, 8:17–9:22.  Garcha contends that Defendants' actions run contrary to law under the APA because their "attempt to resurrect the expedited removal order four years later violates independent statutory requirements."  Opp. at 13:3–14:11.  Garcha further contends that USCIS's dismissal violates his Due Process rights.  *Id.* at 15:5–16:5.

An agency acts "*ultra vires*" when it acts in excess of its statutory authority.  *See Adamski v. McHugh*, 304 F. Supp. 3d 227, 236 (D.D.C. 2015) (citing *Black's Law Dictionary* 1755 (10th ed. 2014) ("Literally translated, the Latin phrase 'ultra vires' means 'beyond the powers of,' and as a legal term, the phrase means 'unauthorized' or 'beyond the scope of power allowed or granted by law.'" )) (cleaned up).  *Ultra vires* is often used to describe APA claims where the plaintiff contends that an agency action is not in accordance with law or in excess of statutory jurisdiction.  *Id.* (citing 5 U.S.C. § 706(2)(A), (C)); *see also Nw. Envtl. Advocates v. EPA,* 537 F.3d 1006, 1014 (9th Cir. 2008) (referring to plaintiff's claims under APA sections 706(2)(A) and (C) as *ultra*

*vires* arguments).

Here, the Court concludes that Garcha pleads sufficient facts to plausibly allege that Defendants' actions contravened the INA, in violation of the APA.[6]  Garcha alleges that Defendants' actions violate the INA because they did not make a credible fear determination within 90 days of issuing Garcha the Form I-860 (order of expedited removal).  FAC ¶ 33.  The INA requires that the Attorney General remove a noncitizen "from the United States within a period of 90 days" following the noncitizen's order of removal.  8 U.S.C. § 1231(a)(1)(A).  Once an expedited removal order is issued for a noncitizen who intends to apply for asylum, a CFI is required to determine whether a noncitizen is referred to regular removal or removed under the original expedited removal order.  *Id.* at §§ 1225(b)(1)(A)(i)–(ii), (B)(iii)(I); *Thuraissigiam*, 591 U.S. at 110 (citing 8 C.F.R. § 208.30(f)).  Defendants protest that Garcha points to no authority that they have a statutory duty to conduct his CFI within a specific timeframe.  Reply at 6:7–18.  But Defendants do not point to any authority permitting them to place a CFI indefinitely on hold in an expedited removal proceeding.  Because a noncitizen must be removed within 90 days of a removal order, Garcha plausibly alleges that all steps required to effectuate an expedited removal order—including the CFI— must also be completed within 90 days.  Further, while 8 C.F.R. § 208.30(b) allows USCIS to "refer" a noncitizen subject to expedited removal to regular removal proceedings "without making a credible fear determination," reversing that referral years later would then seem to place the government in violation of the INA because that would mean the CFI did not occur in a timely fashion.

Garcha further alleges that Defendants' actions violate the INA because they are conditioning Garcha's right to apply for asylum upon his passing a CFI, more than one year after he entered the United States.  FAC ¶ 37.  The INA requires a noncitizen to file an asylum application within one year after the date of their arrival in the United States.  8 U.S.C. §

---

[6] Because the Court concludes that Garcha sufficiently alleges that Defendants' actions violated the INA, the Court need not reach Garcha's argument that these actions also violated his right to Due Process at the pleadings stage.  *See* Opp. at 15:5–18:8.  And because Garcha's claims survive dismissal, the Court need not reach Garcha's argument that Defendants are equitably estopped from not recognizing Garcha's status in regular removal.  *See id.* at 14:12–15:4.

United States District Court
Northern District of California

1158(a)(2)(B).  Garcha argues that by delaying his CFI, Defendants prejudiced his right to apply for asylum because any subsequent defensive filing by him will occur years after his arrival in the United States.  Opp. at 14:4–11.  Notably, Defendants do not respond to Garcha's argument that USCIS's dismissal results in him being subjected to the one-year filing bar because he cannot receive credit for his affirmative asylum application filed in 2022.  *See generally* Reply.  Defendants thus concede this argument.  Therefore, Garcha plausibly alleges that Defendants' actions violate the INA.

## V.    CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: March 17, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

24